[Cite as *In re A.D.*, 2019-Ohio-3671.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| A.D., H.J. #1, and H.J. #2 | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | Case Nos.  19 CA 20 |
| | : | 19 CA 21 |
| | : | 19 CA 22 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeals from the Court of Common
                               Pleas, Case No. 17JC00201

JUDGMENT:                      Affirmed

DATE OF JUDGMENT:              September 11, 2019

APPEARANCES:

For Appellant-Father                    For Appellee

JEANETTE M. MOLL                        MELISSA M. WILSON
P.O. Box 461                            274 Highland Avenue
Zanesville, OH  43702                   Cambridge, OH  43725

For the Children                        Guardian ad Litem

MARK A. PERLASKY                        RUTHELLEN WEAVER
232 West 3rd Street, Suite 323          542 South Drexel Avenue
Dover, OH  44662                        Bexley, OH  43209

For CASA

MAGGIE BOYD LAPLANTE
139 West 8th Street

Cambridge, OH  43725
*Wise, Earle, J.*

{¶ 1}   Appellant-Father, T.J., appeals the May 2, 2019 journal entry of the Court of Common Pleas of Guernsey, Ohio, Juvenile Division, terminating his parental rights and granting permanent custody of his children to appellee, Guernsey County Children Services.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On May 22, 2017, appellee filed a complaint alleging three children to be neglected, abused, and/or dependent: A.D. born September 2001, H.J. #1 born March 2006, and H.J. #2 born March 2006.  Mother of the children is D.D.; father is appellant herein.  The children had been placed in appellee's temporary custody on May 21, 2017, pursuant to an ex parte order.

{¶ 3}   Adjudicatory and dispositional hearings were held on August 10, 2017, wherein the parents admitted the children were dependent.  By journal entry filed August 15, 2017, the trial court found the children to be dependent and continued appellee's temporary custody.

{¶ 4}   On January 10, 2019, appellee moved to modify the dispositional order to one of permanent custody.  A hearing was held on April 26, 2019.  By journal entry filed May 2, 2019, the trial court terminated the parents' parental rights and granted appellee permanent custody of the children.

{¶ 5}   Appellant filed appeals, one for each child, and this matter is now before this court for consideration.  Assignments of error are identical and are as follows:

I

{¶ 6}  "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

II

{¶ 7}  "THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILDREN SHOULD NOT BE PLACED WITH APPELLANT AND THAT IT WAS IN THE MINOR CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF GUERNSEY COUNTY CHILDREN'S SERVICES."

I, II

{¶ 8}  In both assignments of error, appellant challenges the trial court's decision to terminate parental rights and grant permanent custody of the children to appellee. Specifically, appellant claims the decision was against the sufficiency and manifest weight of the evidence and there was not clear and convincing evidence to find the children's best interests were best served with granting permanent custody to appellee.  We disagree.

{¶ 9}  Sufficiency of the evidence "is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law."  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 10} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *Thompkins, supra,* at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.)

{¶ 11} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 12} R.C.2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned***and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period***.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 13} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 14} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant.

{¶ 15} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

{¶ 16} Appellant does not contest the fact that the children were placed in appellee's temporary custody on May 21, 2017, adjudicated on August 15, 2017, and the permanent custody hearing was held on April 26, 2019. As found by the trial court, the children have been in appellee's custody for over twelve months of a consecutive twenty-two-month period. R.C. 2151.414(B)(1)(d). Appellant argues no evidence was presented to support any of the factors under R.C. 2151.414(E).

{¶ 17} Darius Jones, a family support specialist with appellee, testified to observing visitations between the parents and the children. T. at 15. Appellant had weekly visitations, but did not regularly attend due to transportation issues or being incarcerated. T. at 21. Mr. Jones was concerned about appellant's lack of consistency when it came to redirecting the children. T. at 23. When A.D. chose to attend the visitations, appellant would not interact with the child, "[t]here was no conversation * * * no eye contact * * * it was almost like they both were invisible to each other inside of the room." *Id.* Mr. Jones had the opportunity to drug screen appellant, but the majority of the time appellant refused. T. at 24.

{¶ 18} Amanda Kennedy, the family's ongoing caseworker, testified when the children were removed from appellant's home in May 2017, there were concerns of substance abuse by appellant and the home was in a "condemned state." T. at 42-43. A.D. told law enforcement he went days without being given food, and at times he would get kicked or locked out of the house. T. at 43.

{¶ 19} Under the case plan, appellant was to complete drug and alcohol assessment and follow all recommendations. T. at 46. Ms. Kennedy stated appellant had made very little progress and had been involved with three drug and alcohol providers, Guernsey Behavioral Health Choices, Noble Behavioral Health Choices, and Health First Medical Center. T. at 47-49. He attended Noble Behavioral Health Choices for a while, but then started with no-calls and no-shows, and was discharged from the program in January of 2019. T. at 48-49. While at Health First Medical Center, appellant attended only three appointments and was positive on all his drug screens in November and December 2018. T. at 49-50. He tested positive at times for amphetamines, methamphetamines, Suboxone, THC, and benzos. T. at 50. He did not successfully complete any drug and alcohol services. *Id.* Appellant took drug screens for Ms. Kennedy in 2018, some of which were positive and some were negative, but in the year prior to the hearing, appellant refused approximately ten requests. T. at 59-60. Appellant had some drug related criminal involvement e.g., disorderly conduct due to intoxication, driving with a suspended license, possession of drug paraphernalia, open container. T. at 60-62, 64.

{¶ 20} Appellant was also required to complete mental health assessment and follow all recommendations. T. at 46. Appellant did a mental health assessment with Mid-Ohio Behavioral Health, but did not return for services. T. at 50-51. He did not successfully complete mental health services. T. at 51.

{¶ 21} Appellant was to obtain stable housing and maintain it in a clean, safe, and sanitary manner. T. at 46. When the children were removed, appellant was living in a home that was condemned. T. at 51. He then spent several months homeless until he obtained housing in Noble County in November 2017. T. at 52. At first the housing was

appropriate, but then it went downhill e.g., cardboard was being used for flooring, foul smell, a lot of mold, cockroaches. T. at 52-53. A few months before the April 2019 hearing, appellant moved to a camper in Ava, Ohio. T. at 52, 54. There was a "built-on, shed-type porch onto the camper." T. at 54. When Ms. Kennedy attempted to visit the home, no one answered her knock, even though she could hear loud music and dogs barking. *Id.*

{¶ 22} Appellant was to obtain and maintain enough economic resources to support the children. T. at 46-47. Ms. Kennedy stated appellant did not have stable employment. T. at 56. He did mostly side jobs, nothing long-term. *Id.* His economic resources included food stamps and disability. *Id.* Ms. Kennedy opined the family did not have enough economic resources to support themselves. *Id.*

{¶ 23} Appellee had continued concerns with appellant's drug use, lack of suitable housing, and noncompliance with service providers. T. at 64. Ms. Kennedy believed the children and the parents loved each other, but did not have an opinion on whether they were bonded to each other. T. at 78.

{¶ 24} Chari Roberts, clinical director of Mid-Ohio Behavioral Health, testified in September 2017, appellant was assessed and it was recommended that he receive counseling services for "[m]ajor depressive disorder, single episode, mild." T. at 7-8. Appellant never returned for counseling. T. at 8.

{¶ 25} Appellant testified the initial problem was that A.D. was misbehaving and fabricated "the truth his way." T. at 86. Appellant was attempting to fix up the house, but after the agency became involved, "it automatically was condemned." T. at 87. Appellant stated when he started with the case plan, he followed everything, wanted his children

back, but then the agency "turned the other cheek, and so, we weren't doing enough or didn't do it right or something." T. at 87-88. That caused him to become discouraged. T. at 88. "It was either follow the case plan and that's it. Nothing - - no other avenues were open, none, by any of the caseworkers that have been on this case." *Id.* He stated he loved his children with all his heart and felt he had a bond with them. T. at 88-89. He stated he did not want to resume working on a case plan. T. at 89.

{¶ 26} Ruthellen Weaver, the guardian ad litem, testified it was her recommendation that in the best interest of the children, the children should be placed in the permanent custody of appellee and appellee should pursue adoption. T. at 95. The children needed permanency, and H.J. #1 and H.J. #2 have "settled in very well in the only foster home that I'm aware of that they've been in. It's a foster home which has integrated them into that family. They are bonded and attached to the foster parents, to the other children that are in the home." T. at 95-96. They are involved in various activities and are doing very well. T. at 96. Ms. Weaver opined the children's parents were "good people, but they're not motivated to do the case plan." *Id.* She stated, "it's very hard to fight drug addiction and fecklessness when it comes to housing and income. But they do love their children, that's for sure." *Id.*

{¶ 27} Julia Dowling, the court appointed special advocate, testified it was her recommendation that the children be placed in appellee's permanent custody because the children "really haven't had any stability with their parents. One time the parents are doing what they're supposed to be doing and another time they're not. And the children are old enough to understand that things aren't the way they should be." T. at 102. H.J.

#1 and H.J. #2 are very bonded with their foster placement. T. at 103. A.D. will turn eighteen soon and "plans to walk and be on his own." T. at 102.

{¶ 28} As explained by our brethren from the Second District in *In re A.J.S. & R.S.,* 2d Dist. Miami No. 2007CA2, 2007-Ohio-3433, ¶ 22:

Accordingly, issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. In this regard, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Finally, an appellate court must adhere to every reasonable presumption in favor of the trial court's judgment and findings of fact. *In re Brodbeck,* 97 Ohio App.3d 652, 659, 647 N.E.2d 240, citing *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 1994-Ohio-432, 638 N.E.2d 533.

{¶ 29} Further, " 'the discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' " *In re Mauzy*

*Children,* 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073, *2 (Nov. 13, 2000), quoting *In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

{¶ 30} There is no doubt appellant loves his children. However, he made few attempts to complete the case plan between the time the children were placed in appellee's temporary custody, May 2017, and the filing of the motion for permanent custody in January 2019. In November and December 2018, appellant tested positive for various drugs, and refused the agency's request for drug screens on numerous occasions. He did not complete any drug/alcohol and mental health services. He could not maintain stable housing and employment, and did not have the economic resources to support the children. He missed visitations due to lack of transportation or incarceration.

{¶ 31} With these facts, it is impossible for this court to second guess the trial court. As stated above, credibility, reliability, and forthrightness are within the province of the trier of fact.

{¶ 32} Upon review, we find sufficient clear and convincing evidence to support the trial court's decision to grant appellee permanent custody of the children, and do not find any manifest miscarriage of justice.

{¶ 33} Assignments of Error I and II are denied.

{¶ 34} The judgment of the Court of Common Pleas of Guernsey County, Ohio, Juvenile Division is hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Wise, J. concur.
EEW/db