[Cite as *State v. Washington*, 2024-Ohio-1056.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112914 |
| v. | : | |
| BENNIE WASHINGTON, SR., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-668858-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Scott J. Friedman, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Bennie Washington, Sr. ("appellant") brings this appeal challenging his convictions for murder, felonious assault, gross abuse of a corpse, and having a weapon while under a disability, along with accompanying firearm

specifications.  After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} This matter arises from the murder of appellant's girlfriend, Audreona Barnes ("Barnes"), whose remains were discovered on the balcony of appellant's apartment.

{¶ 3} Appellant and Barnes began dating in the spring of 2021.  Barnes was 18 years old at the time, while appellant was 39.  During the summer of 2021, Barnes spent part of the time at her mother's house and part of the time at appellant's residence on Warner Road in Cleveland.

{¶ 4} On July 30, 2021, Barnes had an appointment with a recruiter for the National Guard.  The recruiter picked her up for the meeting and dropped her off at appellant's house when the meeting was over.  This was the last time that anyone reported seeing Barnes alive.

{¶ 5} Barnes's mother, Akua Avegnon ("Avegnon") had spoken to her earlier that day via FaceTime, and they had plans to get together in the evening.  When Barnes did not come home that night, Avegnon tried calling and texting her but was unsuccessful.  The next day, Avegnon went to appellant's apartment, looked around, and asked appellant if he knew where Barnes was.  Appellant told her that he thought that Barnes had gone home since he knew she had had plans that evening. Avegnon looked for Barnes in every place she thought she might be, but when she had not found her by the evening, Avegnon reported Barnes missing to the police.

{¶ 6} In March 2022, appellant was evicted from his apartment on Warner Road. Bailiffs from Cleveland Housing Court entered the apartment and removed some of appellant's personal property. The bailiffs were not responsible for removing any trash from the apartment.

{¶ 7} A week later, representatives of the apartment's management team, including Judy Hloska ("Hloska"), who was also appellant's neighbor, went into appellant's apartment to clean out any remaining trash.

{¶ 8} During the clean-out, they discovered human remains on the balcony of appellant's apartment, wrapped in blankets and garbage bags, with pieces of cardboard and duct tape. The property manager immediately notified Cleveland police.

{¶ 9} The remains were identified as Barnes, and an autopsy was performed. The cause of death was determined to be a gunshot to the head. Barnes's body had been on the balcony for several months and was severely decomposed.

{¶ 10} Appellant was charged with two counts of aggravated murder, three counts of murder, one count of kidnapping, two counts of felonious assault, one count of gross abuse of a corpse, and one count of having a weapon while under a disability.

{¶ 11} The matter proceeded to a jury trial. Appellant waived his right to a jury trial as it pertained to the charge of having a weapon while under a disability and that count was decided by the court.

{¶ 12} The jury found appellant guilty of two counts of murder, two counts of felonious assault, and the sole count of gross abuse of a corpse, along with one- and three-year firearm specifications accompanying the murder and felonious assault charges. Appellant was found not guilty of the remaining charges.

{¶ 13} The court found appellant guilty of having a weapon while under a disability along with the 54-month firearm specification and the repeat-violent-offender specification.

{¶ 14} Appellant was sentenced to a total prison term of 38 years to life in prison. He then filed the instant appeal, raising three assignments of error for our review:

> 1. The trial court erred in permitting a detective to testify about the conclusions of a medical examiner, in violation of appellant's right to confront witnesses under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> 2. The trial court erred when it permitted a State's witness to testify that appellant invoked his right to an attorney and right to remain silent, in violation of appellant's rights under the Fifth and Sixth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> 3. Appellant was denied the effective assistance of counsel, in derogation of his rights under the Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

## II. Law and Analysis

### A. Testimony of Detective

{¶ 15} In his first assignment of error, appellant argues that the trial court erred in permitting a detective to testify that the remains from appellant's balcony

were identified as Barnes during the autopsy by the medical examiner's office. He contends that the detective was permitted to testify as to a hearsay statement made by an unknown person at the medical examiner's office and that this testimony violated his rights under the Confrontation Clause. He asserts that the admission of the testimony constituted plain error because the outcome of the trial would have been different had the state not been able to identify the victim.

{¶ 16} Det. Zara Hudson was a part of the initial investigation of the scene where Barnes's remains had been found. He testified as to the initial steps taken and what he had seen on the balcony. Det. Hudson stated that when his department is investigating a homicide, they utilize the assistance of other county agencies, including the medical examiner's office. He explained that they rely on the medical examiner's office for assistance in identifying bodies and did so in the instant matter. The following exchange occurred during Det. Hudson's direct examination:

> PROSECUTOR: And as it relates to your investigation, how was Audreona Barnes identified as this being her remains?
>
> WITNESS: Through the scientific measures that the Medical Examiner's Office did during autopsy. She was identified through previous medical records.
>
> PROSECUTOR: And is that information relayed to you and your team members as part of your investigation?
>
> WITNESS: Yes, it was.

{¶ 17} A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay. *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 10.

We will not disturb a trial court's decision regarding the admissibility of hearsay evidence absent an abuse of discretion and the defendant suffers material prejudice. *Id.*, citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984). Appellant's trial counsel did not object to this testimony, and thus we may only review for plain error.

{¶ 18} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). If either element is missing — (1) a statement or (2) offered for its truth — the testimony is not hearsay. *State v. Holt*, 9th Dist. Lorain No. 97CA006985, 1999 Ohio App. LEXIS 4149, 8 (Sept. 8, 1996), citing *Maurer* at 262.

{¶ 19} A "statement" is (1) an oral or written assertion or (2) nonverbal conduct intended to be an assertion. Evid.R. 801(A). For hearsay purposes, an "assertion" is "a statement about an event that happened or a condition that existed." *State v. Wellman*, 10th Dist. Franklin No. 05AP-386, 2006-Ohio-3808, ¶ 14, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 61; *State v. Carter*, 72 Ohio St.3d 545, 549, 651 N.E.2d 965 (1995), quoting 2 McCormick, *Evidence*, Section 246, at 98 (4th Ed.1992) ("An 'assertion' for hearsay purposes 'simply means to say that something is so, e.g., that an event happened or that a condition existed.'").

{¶ 20} The historic purpose of the hearsay rule is "to exclude statements of dubious reliability that cannot be tested by cross-examination." *State v. Yarbrough,*

95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 70; *State v. Armstead*, 85 Ohio App.3d 247, 253, 619 N.E.2d 513 (3d Dist.1993), quoting *Mikula v. Balogh*, 9 Ohio App.2d 250, 224 N.E.2d 148 (2d Dist.1965) ("[T]he rule prohibiting hearsay evidence is based upon 'unreliability of such evidence and the impossibility of cross-examination.'").

{¶ 21} Det. Hudson did not testify as to what the medical examiner's office had told him. He merely stated that the remains were identified as Barnes by the medical examiner's office through previous records and that this information was relayed to the investigatory team as part of their investigation. The evidence was introduced to provide context to the investigation and appellant's arrest. It was not offered for the truth of the statement and, therefore, did not constitute hearsay.

{¶ 22} Moreover, there is no violation of the Confrontation Clause because appellant had the opportunity to cross-examine a representative of the Medical Examiner's Office. "The admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 64, citing *California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *State v. Keenan*, 81 Ohio St.3d 133, 142, 689 N.E.2d 929 (1998). In the instant matter, Dr. Todd Barr, who was employed at the time of the investigation at the medical examiner's office, testified regarding identification of the remains found on the balcony of appellant's apartment. He outlined the usual methods that the medical examiner's office used for identification but stated that the autopsy report did not identify the method in which Barnes had

been identified. Ultimately, though, the remains had been identified as Barnes. Dr. Barr testified that her name was on the autopsy report.

{¶ 23} We do not find that the trial court plainly erred in admitting the testimony of the detective, and appellant's first assignment of error is overruled.

## B. Testimony regarding appellant's invocation of his Fifth and Sixth Amendment Rights

{¶ 24} In his second assignment of error, appellant argues that Det. Gregory Curry improperly testified that when he was investigating Barnes's disappearance, appellant "refused to talk" with law enforcement and told detectives to speak with his attorney.

{¶ 25} Det. Curry was assigned the case after Barnes had been reported missing by her mother. He explained to the jury the normal steps in investigating the disappearance of a person, including trying to figure out who the person was and what was going on in their life, and obtaining information from their family and friends.

{¶ 26} Det. Curry testified that he learned that Barnes sometimes stayed with appellant, who was her boyfriend. He learned that Barnes had met with the National Guard recruiters on the last day that she had been seen alive and had been dropped off at appellant's apartment. He made contact with appellant on the street in front of his apartment building. At this time, family and friends were canvassing the neighborhood looking for Barnes. Det. Curry and his partner saw appellant sitting

inside of an SUV parked on the street. They walked over to him and began to speak with him.

{¶ 27} Initially, appellant was pleasant, but after he learned that Det. Curry and his partner were police officers, he declined to continue talking and walked away from them. He stated that if Det. Curry had anything further to say, he could reach out to his attorney.

{¶ 28} Det. Curry testified that he tried to contact appellant a couple more times and that appellant was going to come in to be interviewed, but he never showed up.

{¶ 29} Appellant argues that this testimony regarding his silence and his invocation of his right to an attorney served no purpose other than to provide evidence of his guilt. He argues that the testimony violated his right to remain silent and right to an attorney. Again, appellant's trial counsel did not object to this testimony, and we are limited to reviewing for plain error.

{¶ 30} In general, "[u]se of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, at syllabus. However, one exception to this rule exists where the state uses a defendant's prearrest silence as evidence of the "course of the investigation." *Id*. at ¶ 32.

{¶ 31} At the time appellant made the above statements to Det. Curry, Barnes had only been reported missing. Police did not know that she was deceased, and appellant had not been implicated in any crime. Det. Curry's testimony regarding

his interactions with appellant was offered as he described how his investigation had unfolded and was not offered as substantive evidence of appellant's guilt.

{¶ 32} Appellant has not demonstrated plain error, and his second assignment of error is overruled.

## C. Ineffective Assistance of Counsel

{¶ 33} In his third and final assignment of error, appellant argues that he was denied the effective assistance of counsel when his trial counsel (1) did not object to the detective's testimony concerning a medical examiner's conclusions; (2) did not object to testimony that appellant invoked his right to an attorney and right to remain silent; and (3) did not object to evidence of prior crimes and acts that were inadmissible under Evid.R. 404(B). Appellant contends that the cumulative effect of his trial counsel's errors deprived him of the effective assistance of counsel.

{¶ 34} In order to establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and fell below an objective standard of reasonableness and (2) that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different. *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216, ¶ 28 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must satisfy both prongs of the test in order to prove ineffective assistance of counsel. *State v. Harris*, 8th Dist. Cuyahoga No. 109083, 2020-Ohio-4138, ¶ 28, citing *Strickland* at 687.

{¶ 35} Under Ohio law, "every properly licensed attorney is presumed to be competent." *State v. Knight*, 8th Dist. Cuyahoga No. 109302, 2021-Ohio-3674, ¶ 47, citing *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, when "evaluating counsel's performance on a claim of ineffective assistance counsel, the court must give great deference to counsel's performance and 'indulge a strong presumption' that counsel's performance 'falls within the wide range of reasonable professional assistance.'" *Id.*, quoting *Strickland* at 689.

{¶ 36} With regard to appellant's first two assertions — that his counsel failed to object to hearsay testimony and testimony that violated his right to remain silent and his right to an attorney — we have already determined that no error had occurred. Accordingly, any objection by appellant's trial counsel to the presentation of such testimony would have been meritless. "The failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. New Bey*, 8th Dist. Cuyahoga No. 109424, 2021-Ohio-1482, ¶ 58, citing *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 37.

{¶ 37} Appellant further contends that his trial counsel was ineffective for failing to object to evidence of prior crimes and acts that were inadmissible under Evid.R. 404. Specifically, he cites (1) Hloska's testimony that Barnes had told her that appellant had hit her, that he had harassed Hloska for a year, and that he had broken into her apartment; and (2) Det. Curry's testimony that there was

"speculation" that appellant had caused a housefire but that there was no evidence to prove it.

{¶ 38} "Objecting is a tactical decision." *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583,¶ 25 (8th Dist.), citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. Accordingly, "'the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.'" *Id.*, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

{¶ 39} Preliminarily, it appears that appellant's trial counsel did, in fact, object to Hloska's testimony that Barnes had told her that appellant was "hitting her." This objection was sustained; the court struck the testimony and gave a curative instruction to the jury.

{¶ 40} Nevertheless, appellant's trial counsel did not object to the testimony that appellant had harassed Hloska and had broken into her apartment or to Det. Curry's testimony regarding the housefire that appellant was suspected of setting. Appellant argues that this testimony was entirely irrelevant and not presented for any legitimate purpose under Evid.R. 404(B).

{¶ 41} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Supreme Court of Ohio has stated that "[t]his type of evidence is commonly referred to as 'propensity' evidence because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question. * * * Evid.R. 404(B) categorically bars the use of other-acts evidence to

show propensity." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 21.

> Evid.R. 404(B) does, however, allow evidence of the defendant's other crimes, wrongs, or acts to be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.) The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue. The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law.

*Id.* at ¶ 22.

{¶ 42} To determine whether other-acts evidence is admissible, "trial courts should conduct a three-step analysis."

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶ 43} As it relates to the testimony that appellant harassed Hloska and had broken into her apartment, this testimony was elicited after Hloska was asked about whether she had interacted with appellant after Barnes had gone missing. Hloska had previously testified that she and Barnes had been friends and that she would go

over to appellant's apartment to visit Barnes when he was not around. She stated that she did not interact with appellant after Barnes went missing but that he had called her a "stupid white b****," banged on her door, and had broken into her apartment and left dishes in there. She testified that he had never been like that prior to Barnes going missing and that he had been "cool" with her. At one point after Barnes had been missing, Hloska asked him where she was. He responded that she was in Georgia with a friend. Hloska testified that he began harassing her after that.

{¶ 44} We do not find that Hloska's testimony was offered to prove appellant's propensity for violence. The Supreme Court of Ohio has held that evidence of threats or intimidation of witnesses reflects a consciousness of guilt that is similar to evidence of flight to avoid prosecution, efforts made to cover up a crime, or intimidation of witnesses and is admissible as admission by conduct. *State v. McLeod*, 7th Dist. Jefferson No. 05 JE 15, 2006-Ohio-7076, ¶ 30, citing *State v. Richey*, 64 Ohio St.3d 353, 357, 595 N.E.2d 915 (1992). *See also State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980. Appellant's behavior toward Hloska changed after Barnes went missing and particularly after Hloska asked about her whereabouts. Accordingly, testimony regarding appellant's intimidating acts toward Hloska, which were part of his efforts to conceal his crime, was admissible at trial, and appellant's trial counsel properly declined to object.

{¶ 45} Finally, Det. Curry testified that there was no evidence that appellant was involved in burning down the house. Thus, this was not an "other act"

committed by appellant, and the detective's testimony cannot constitute evidence of appellant's "other crimes, wrongs, or acts" under Evid.R. 404. There was no basis for objection, and, therefore, appellant's trial counsel was not ineffective in declining to object.

{¶ 46} Appellant has failed to demonstrate that the claimed other acts evidence was improperly admitted and also has failed to show that he received ineffective assistance of counsel. As we have determined that appellant's trial counsel was not ineffective, appellant's argument regarding the "cumulative effect" of his counsel's errors must also necessarily fail.

{¶ 47} Appellant's third assignment of error is overruled.

### III. Conclusion

{¶ 48} The trial court did not allow hearsay testimony or testimony that violated appellant's right to remain silent or his right to counsel. In addition, appellant did not receive ineffective assistance of counsel. All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR