[Cite as *In re N.D.*, 2025-Ohio-1417.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF N.D. | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. David M. Gormley, J. |
| | : | |
| | : | |
| | : | Case No. 2024 CA 00094 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
                             Court of Common Pleas, Juvenile
                             Division, Case No. F2021-0098

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            April 18, 2025

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant Father

JENNY WELLS                           MICHAEL R. DALSANTO
Licking County Prosecuting Attorney   P.O. Box 98
                                      Newark, Ohio 43055
By: KENNETH W. OSWALT
Assistant Prosecuting Attorney        Attorney for Mother
20 South Second Street
Newark, Ohio 43055                    ADAM O. JOHNSON
                                      5599 Levi Kramer Blvd.
Attorney for Minor Child              Canal Winchester, Ohio 43110

JOHN H. OBORA                         Guardian Ad Litem
29 South Park Ave
Newark, Ohio 43055                    ROBIN L. GREEN
                                      P.O. Box 157
                                      Newark, Ohio 43055

*Baldwin, P.J.*

{¶1}   The appellant, M.M., appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to the appellee, Licking County Job and Family Services ("the Agency").

## STATEMENT OF THE FACTS AND THE CASE

{¶2}   On December 22, 2017, N.D. was born. F.D. is the biological mother of N.D., and M.M. is the biological father of N.D.

{¶3}   On February 17, 2021, the Agency became involved with the child due to an allegation of neglect by F.D. after she was admitted into residential treatment for the use of methamphetamines.

{¶4}   On March 25, 2021, the Agency filed a Complaint that N.D. and her younger half-brother were dependent children.

{¶5}   On April 9, 2021, the trial court granted the Agency emergency shelter care custody after F.D. was unable to continue to care for the children.

{¶6}   On June 8, 2021, N.D. was adjudicated to be a dependent child and was placed into the temporary custody of the Agency.

{¶7}   On February 23, 2022, the trial court extended the Agency's temporary custody of N.D. until September 25, 2022.

{¶8}   On August 30, 2022, the Agency filed a Motion for Permanent Custody of N.D.

{¶9}   On April 18, 2024, the trial court held a hearing on the Agency's Motion for Permanent Custody after the Agency received an Interstate Compact on the Placement of Children ("I.C.P.C.") report on the appellant's living situation in Arizona.

{¶10}   F.D. was not present at the hearing, but was represented by counsel.

**{¶11}** First, Brittany Adzic testified she is employed as a case worker for Licking County Children's Services. The Agency became involved with N.D.'s case as F.D. was unemployed, homeless, and relapsed on methamphetamines. The appellant was not present at the time; he was living in Arizona. On June 8, 2021, N.D. was adjudicated a dependent child. The Agency attempted to place N.D. with M.M.'s sister, but M.M. and his sister did not follow the case plan.

**{¶12}** Ms. Adzic testified that F.D.'s housing has not been stable throughout the duration of the case plan. She has been to multiple sober living facilities, living in a hotel, living at a shelter, living at a friend's house, and is now homeless. Her employment has also been unstable. She worked at McDonald's, then at a pizza shop, and then back to McDonald's. The longest she served in a job was six months. The appellant has been unemployed since September of 2023.

**{¶13}** The Agency has also been concerned with F.D.'s substance abuse and mental health. Aside from F.D.'s relapse with methamphetamine, she also has consistently been in relationships with domestic violence. F.D. had filed and later terminated a protection order against the appellant. F.D. is currently in a relationship with domestic violence. The Agency also does not believe F.D. can fend for herself.

**{¶14}** The Agency's third concern with F.D. is her anger management and parenting issues. She has not been able to control her emotions appropriately and has not been able to parent her children. She has not met her children's basic needs or been involved with any parenting services that have been offered. However, she attended supervised visits frequently.

**{¶15}** The Agency's next concern is with the appellant. Prior to the case being opened, the appellant had very little contact with N.D. He was living in Arizona at the time.

Since he moved back in 2022, he has never had stability or been able to provide independent housing for himself. Throughout the case, he has lived with his girlfriend in Arizona, his sister, his aunt, and then back to Arizona with his girlfriend. The appellant's last in-person visitation with N.D. was June 6, 2023. He has weekly phone calls.

{¶16} The appellant obtained an I.C.P.C. report, which said he was residing at his girlfriend's residence. It did not list him as the applicant on the lease. The Agency has concerns about the appellant's ability to maintain housing. He has not maintained employment to sustain independent housing and has not shown stability on his own. The employment he did report to the Agency was usually for just a month or two here or there. It's never consistent. He recently declared that he had over $2,000 in monthly income but failed to respond to the Agency's attempt to verify the income. During his in-person visits, the Agency had to supply the appellant with gas cards because he reported he was struggling with his finances.

{¶17} The Agency is also concerned with the appellant's mental health. He completed five visits with the Columbus Department of Health before terminating because he moved. The appellant completed some parenting courses. The appellant has not been able to complete any drug screens since moving to Arizona.

{¶18} Ms. Adzic then stated her concerns about placing N.D. with the appellant are his housing and financial stability. He has not had stable housing or employment, he has not been able to meet his own basic needs, and he has moved to Arizona in the middle of the custody hearing to live with his girlfriend, relying on her to meet his own needs. The I.C.P.C. report indicates that he works from home during the day. He has not provided the Agency with anything to verify his working situation. The appellant has not provided any financial support throughout the pendency of this case. There is very

minimal contact between the Agency and the appellant. While the appellant responds to the Agency, he initially resisted obtaining the I.C.P.C. in Arizona.

{¶19} The trial court granted the Agency temporary custody of N.D. in April of 2021. The Agency placed N.D. with a kinship provider in September of 2022. N.D. is living with F.D.'s brother. N.D. has bonded with the current kinship provider. She has a great relationship with her grandparents. N.D. has always been placed with her younger brother.

{¶20} Ms. Adzic says the appellant's visits with N.D. have always been supervised. It is obvious that he loves his daughter. They have great one-on-one contact during the visits.

{¶21} Ms. Adzic's recommendation is for permanent custody to be granted to the Agency.

{¶22} Next, W.P. testified that N.D. is living with her along with N.D.'s half-brother and three other children. N.D. refers to her and her husband as Mom and Dad. They have a typical parent/child relationship. W.P. is still in touch with F.D. She speaks to her every other week, and they meet monthly. W.P. speaks with F.D.'s mother almost daily.

{¶23} W.P. has discussed taking legal custody as opposed to permanent custody of the children, but she does not want that. She wants parental rights even after the children reach the age of majority. She would continue to allow N.D.'s biological parents to have a relationship with N.D. She said the appellant is welcome to call anytime N.D. will be available for visits when he is in town, and W.P. would arrange to bring N.D. to Arizona periodically.  N.D. would have visits with the family that lives in town at least once a month. W.P. also worries that if N.D. is taken out of state, her relationship with her half-

brother and grandparents will cease. N.D.'s grandparents have been the main source of stability in her life so far.

{¶24} N.D. has adapted well to kindergarten. She is energetic, joyful and outgoing. She does well academically. Given her energy levels, her foster parents are looking out for ADHD symptoms. The hearing concluded after admitting exhibits and the guardian ad litem's report.

{¶25} On April 25, 2024, the magistrate granted the Agency permanent custody of N.D. The appellant timely filed objections to the magistrate's decision.

{¶26} On October 17, 2024, the trial court overruled the appellant's objections.

{¶27} The appellant filed a notice of appeal and herein raises the following sole assignment of error:

{¶28} "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT LCJFS MADE REASONABLE EFFORTS IN REUNIFYING THE CHILD BECAUSE LCJFS IGNORED AN APPROVED I.C.P.C. HOME STUDY OF THE APPELLANT'S HOME IN ARIZONA."

{¶29} In the appellant's first assignment of error, the appellant argues the trial court's finding that the Agency used reasonable efforts to reunify N.D. with the appellant was against the manifest weight of the evidence. We disagree.

## STANDARD OF REVIEW

{¶30} When reviewing for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered." *Matter of A.D.*, 2019-Ohio-3671 (5th Dist.), ¶9. In weighing the

evidence there is a strong presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179, ¶21.

## ANALYSIS

**{¶31}** In the case sub judice, the appellant argues the Agency did not make reasonable efforts to reunify N.D. and that the trial court failed to consider or seriously consider an I.C.P.C. home study of the appellant's Arizona home. We disagree.

**{¶32}** R.C. 2151.419 imposes a duty on the Agency to make reasonable efforts to reunite parents with their children when the Agency has removed the children from the home. The Ohio Supreme Court has construed reasonable efforts to mean, "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed." *In re C.F.*, 2007-Ohio-1104, ¶28. "Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification." *Matter of D.A.*, 2023-Ohio-2823 (5th Dist.), ¶33; *quoting In re H.M.K.*, 2013-Ohio-4317, ¶95. " 'Reasonable efforts' does not mean all available efforts." *Matter of D.A.*, 2023-Ohio-2823 (5th Dist.), ¶34; *quoting In re Lewis*, 2003-Ohio-5262 (4th Dist.),¶16. A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59 (12th Dist.1992).

**{¶33}** In this matter, the Agency raised concerns about the appellant's ability to provide for his own basic needs and his lack of stable housing. The appellant's employment has not been steady, and he has not provided proof of his reported income when asked about it by the Agency. The appellant has lived at various times throughout this case with his sister, his mother, and now his girlfriend who provides for him. He has

not provided support or shown that the Agency's concerns have been alleviated. Furthermore, this case has been continued several times to give the parents every opportunity to address the Agency's concerns, but they have not. The appellant's argument asks us to determine that the trial court did not consider or seriously consider an I.C.P.C. home study, which was admitted into evidence. However, the appellant fails to point to anything in the record indicating the trial court failed to consider the study. We find the trial court did not clearly lose its way and create a manifest miscarriage of justice. Accordingly, the trial court's granting of permanent custody of N.D. to the Agency is not against the manifest weight of the evidence.

## CONCLUSION

{¶34} The decision of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Gormley, J. concur.