[Cite as *In re J.C.*, 2025-Ohio-5793.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: J.C. | Case No. 2025 CA 00065 |
| Dependant Child | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2024-0154 |
| | Judgment:   Affirmed |
| | Date of Judgment Entry: December 29, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Kevin W. Popham, Judges

**APPEARANCES:** JENNY WELLS, Prosecuting Attorney, KENNETH W. OSWALT, Assistant Prosecuting Attorney, for Plaintiff-Appellee; JERMAINE L. COLQUITT, for Defendant-Appellant E.C.

*Baldwin, P.J.*

**{¶1}** The appellant, E.C., appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, awarding permanent custody of J.C. to the Licking County Jobs and Family Services Division ("the Agency"). The appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

**{¶2}** J.C. was born on August 11, 2011. V.J. is her biological mother. The appellant is her biological father. E.M. is J.C.'s older half-sister and former legal custodian.

**{¶3}** In August of 2022, a complaint was initially filed, removing J.C. from the custody of the appellant and V.J. At that time, E.M. filed for custody of J.C. in Licking County, Ohio. On December 12, 2023, J.C. was placed in the legal custody of E.M.

**{¶4}** In March of 2024, E.M. reported to the Agency that she could no longer care for J.C. due to J.C.'s escalating behavioral issues. On April 9, 2024, the Agency filed a complaint alleging that J.C. was a dependent child and requesting that she be placed in the temporary legal care of the Agency. J.C. was then placed in emergency shelter care with the Agency.

**{¶5}** On March 19, 2025, the Agency filed a Motion for Permanent Custody. The trial court held a hearing on the motion on July 9, 2025.

**{¶6}** At trial, the appellant testified that he is J.C.'s biological father. He has eighteen other children, none of whom are currently in his custody. He has been incarcerated for much of the time relevant to this case for Trafficking in Drugs and was released in December of 2024. He has prior convictions for a separate Trafficking charge, Felonious Assault, Aggravated Burglary, and Aggravated Arson. Overall, the appellant has been incarcerated seventeen of the previous twenty-nine years.

**{¶7}** The appellant had previously been ordered to have no contact with J.C. Despite the order, he sent letters to J.C., claiming he was unaware of the restriction. He has not had custody of J.C. since 2022.

**{¶8}** The appellant completed programs for drug and alcohol treatment, anger management, and domestic violence prevention. He owns a home with his brother, who is currently incarcerated. The appellant believes that his other daughter influenced J.C.'s views on him.

**{¶9}** Sianna Mills, a social worker with the Agency, testified that the Agency became involved due to J.C.'s significant hygiene and behavioral issues. These included refusing to shower, having several vaginal infections, failing to use pads properly during her menstrual cycle, and hiding dirty pads throughout the house. Additionally, J.C. engaged in lying, stealing, and making allegations of sexual abuse at school, which required her to transfer to online schooling. At the time of removal, J.C.'s mother was in a substance abuse treatment facility and the appellant was incarcerated.

**{¶10}** On May 9, 2024, Ms. Mills submitted a case plan to the trial court. The plan did not include either biological parent, as both had demonstrated minimal involvement in J.C.'s life. V.J. reported a history of substance abuse and was still in treatment at the time. She was taking multiple medications for schizophrenia and diabetes.

**{¶11}** Ms. Mills interviewed J.C., who reported witnessing overdoses, criminal activity and gun violence, being forced to engage in sexual activity with family members, and that she was trafficked for drugs. J.C. alleged inappropriate touching by the appellant, that he has had sexual relations with people her age, and that she did not want to be in a room alone with him for that reason. V.J. confirmed that J.C. witnessed violence and overdoses but was unaware of the alleged coercive acts or trafficking. Investigations were conducted into the allegations against the appellant, but no charges were filed.

**{¶12}** Ms. Mills first contacted the appellant was while he was incarcerated. She concluded that neither parent had an active relationship with J.C. and both had made minimal attempts to engage with the Agency.

**{¶13}** E.M., as the only party on the case plan, was expected to support J.C. in completing treatment for mental health, behavioral issues, and hygiene. However, E.M.

failed to do so. E.M. also had two of her own biological children and a niece in her care; the niece was removed due to allegations of physical abuse by E.M., who is currently facing charges.

**{¶14}** J.C. successfully completed treatment and was placed in foster care, where she is doing well. Since the time of the Agency's involvement, she has been diagnosed with PTSD and depression and is receiving ongoing counseling and medication.

**{¶15}** The appellant participated in a program for substance abuse, anger management, mental health, and domestic violence prevention, but the Agency could not verify his completion of the program.

**{¶16}** Ms. Mills contacted the appellant around June 2, 2025, for updated contact information and inquired about his communication with J.C. The appellant stated he had sent over twenty letters to J.C.'s residential facility; however, the facility reported receiving none. The appellant did not provide these letters to the Agency per the Agency's request.

**{¶17}** The guardian ad litem testified that when assigned the case, J.C. was already having a positive experience at her treatment facility. J.C. had made allegations of physical and sexual abuse by the appellant and indicated that the appellant's home had always been involved in criminal activity.

**{¶18}** On July 30, 2025, the trial court granted the Agency's Motion for Permanent Custody.

**{¶19}** The appellant filed a timely notice of appeal and herein raised the following two assignments of error:

**{¶20}** "I. THE TRIAL COURT ERRED IN FINDING THAT THE AGENCY MADE REASONABLE EFFORTS TO REUNIFY THE FAMILY AS REQUIRED BY R.C. 2151.414(E)(1)."

**{¶21}** "II. THE TRIAL COURT ERRED IN ADMITTING HEARSAY TESTIMONY CONCERNING J.C.'S ALLEGED 'DISCLOSURES,' IN VIOLATION OF EVID.R. 802 AND R.C. 2151.35(F), AND THEN RELYING ON THOSE STATEMENTS IN GRANTING PERMANENT CUSTODY TO THE AGENCY."

## I.

**{¶22}** In the appellant's first assignment of error, the appellant argues that the trial court erred in finding that the Agency made reasonable efforts to reunify the appellant and J.C. We disagree.

## STANDARD OF REVIEW

**{¶23}** The appellant challenges the trial court's finding that the Agency made reasonable efforts to reunify the appellant and J.C. under a manifest weight of the evidence standard. When reviewing for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered." *In re A.D.*, 2019-Ohio-3671, ¶19 (5th Dist.). In weighing the evidence there is a strong presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179, ¶21.

**ANALYSIS**

**{¶24}** The appellee argues that the trial court found J.C. to be an abandoned child, and therefore reasonable efforts at reunification were not required. We agree.

**{¶25}** "A children's services agency's reasonable-efforts obligation does not apply in all circumstances." *In re B.W.*, 2025-Ohio-4864, ¶30 (5th Dist.). R.C. 2151.419(A)(2)(d) provides that the Agency is not required to make reasonable efforts at reunification if a trial court finds a parent has abandoned the child. *Id*. Because the trial court found that the appellant had abandoned J.C., the Agency had no obligation to pursue reunification. *See In re C.H.*, 2018-Ohio-3459, ¶13 (5th Dist.) (abandonment is an independently sufficient basis for the granting of a motion for permanent custody).

**{¶26}** Accordingly, the appellant's first assignment of error is overruled.

**II.**

**{¶27}** In the appellant's second assignment of error, the appellant argues that the trial court erred in admitting hearsay testimony concerning J.C.'s alleged "disclosures," in violation of Evid.R. 802 and R.C. 2151.35(F) and relying on them in granting permanent custody. We disagree.

**STANDARD OF REVIEW**

**{¶28}** We apply a de novo standard of review to determine whether the testimony here constitutes hearsay or non-hearsay. *John Soliday Fin. Group, L.L.C. v. Pittenger*, 2010-Ohio-4861, ¶28 (5th Dist.).

**ANALYSIS**

**{¶29}** " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." Evid.R. 801(C). "If either element is missing—(1) a statement or (2) offered for its truth—the testimony is not hearsay." *State v. Washington*, 2024-Ohio-1056, ¶18 (8th Dist.). "[A] juvenile court is presumed to have considered only properly admissible evidence unless the record affirmatively demonstrates otherwise." *In re H.D.*, 2017-Ohio-1333, ¶8 (12th Dist.).

**{¶30}** After a thorough review of the record, we find that the alleged hearsay statements were not admitted for the truth of the matter asserted, but to explain the actions of the witnesses or the circumstances leading to certain interventions. The trial court's judgment entry reflects that it did not rely on these statements for their truth but for context. The statements concerned allegations J.C. made regarding inappropriate touching or sexual abuse by the appellant. The trial court considered these statements in explaining why a contact order was issued and why J.C. does not wish be alone with the appellant. Furthermore, the trial court noted that it is aware of *false* sexual assault allegations.

**{¶31}** Thus, the record demonstrates that the trial court neither admitted nor relied on these statements for the truth of the matter asserted. Therefore, these statements do not constitute hearsay.

**{¶32}** The appellant's second assignment of error is overruled.

## CONCLUSION

**{¶33}** Based upon the foregoing, the decision of the Court of Common Pleas, Juvenile Division, of Licking County, Ohio is hereby affirmed.

**{¶34}** Costs to the appellant.

By: Baldwin, P.J.

King, J. and

Popham, J. concur.